UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| SARAH and DAVID BEKE, et al. | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CASE No. 2:14-CV-00096-WCL-JEM |
| | ) |
| AMICA GENERAL AGENCY INC., | ) |
| | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

After their home was invaded by raw sewage materials and left uninhabitable, plaintiffs, Sarah and David Beke (hereafter, the Bekes")[1] filed a state court complaint for damages against their insurance company, Amica General Agency Inc., DBA Amica Mutual Insurance Company (hereafter, "Amica") [DE 2], asserting that Amica breached its insurance contract with them. Amica removed the case to federal court, [DE 1], and filed the present Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) [DE 7] asserting they paid the proceeds required under the insurance policy at issue and owe no further coverage under the contract of insurance. For the following reasons, Amica's Motion to Dismiss will be DENIED.

## FACTUAL BACKGROUND

On February 28, 2012, workers from the City of Valparaiso were clearing a clog in a sewer line near the Bekes' home through the use of high pressure equipment. According to the allegations of the Complaint, the use of high pressure equipment during this process caused sewage to back up into the Bekes' home from the toilets, sinks, and drains exposing the family to the contaminants and causing substantial damage to both the home as well as the Bekes' personal

---

[1] The Bekes sued individually and on behalf of their minor children.

1

property. (*Complaint* ¶ 7-12). In addition to physical damage to the home and to their personal property, the Bekes' were unable to re-inhabit the home due to the extensive contamination from the raw sewage that had flowed into their residence and were forced to find alternate, temporary lodging. (*Complaint* ¶ 11).

At the time of the sewer backup, the Plaintiffs' home was insured by Amica under a contract of insurance effective April 12, 2011 to April 12, 2012 (hereinafter, "the Policy"). Section I, Coverage C, subsection 12 of the Policy provided for coverage of $10,000 for Water Back-up and Sump Discharge or Overflow. Specifically, those provisions read:

> SECTION I – PERILS INSURED AGAINST
>
> **Coverage C – Personal Property**
>
> We insure for direct physical loss to the property described in Coverage C caused by any of the following perils unless the loss is excluded in Section I – Exclusions.
>
> **12. Accidental Discharge or Overflow of Water or Steam**
>
>     a.    This peril means accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.
>
>     b.    This peril does not include loss:
>           \*    \*    \*
>         (3) On the residence premises caused by accidental discharge or overflow which occurs off the residence premises;

Policy, p. 11.

The Policy also permitted additional coverage for debris removal if the amount of damages exceeded the Policy limits. [DE 8]. These provisions state:

> E.    **Additional Coverages**

2

1. **Debris Removal**

   a. We will pay your reasonable expenses for the removal of:

   (1) Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss;

   * * *

   This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit is available for such expense.

Policy, at p. 5.

After determining that these were the applicable Policy provisions, Amica tendered payment to the Bekes in the amount of $10,000 plus an additional $500 for debris removal. These amounts were based upon the coverage and declarations provisions of the Policy which provide as follows:

WATER BACK-UP AND SUMP DISCHARGE OR OVERFLOW

**A. Coverage**

We insure up to $___* for direct physical loss, not caused by the negligence of an insured, to property covered under Section I caused by water, or waterborne material, which:

1. Backs up through sewers or drains;
   * * *
   *Entries may be left blank if shown elsewhere in this policy for this coverage.

Policy, at p. 1. The Policy's Declarations page contains the endorsement language which provides for a total limit of liability for Water Backup and Sump Discharge or Overflow of $10,000 with a $500 deductible.

3

Despite tendering the amounts Amica claims were dictated under the Water Backup and Sump Discharge to the Bekes, the Bekes filed the present suit asserting that Amica breached the insurance contract with them by interpreting the incident to be a "water backup" rather than an "over-fill or other accidental and unintended contamination event." Under the latter interpretation, the Bekes contend that they are entitled to reimbursement of ongoing medical care and treatment as well as the cost of complete remediation of the contamination from their home. To date, the Bekes remain unable to inhabit the home due to the failure of Amica to remediate the contamination or otherwise cover the losses the Bekes sustained. Amica moves to dismiss the Complaint contending that it properly covered the incident under the "water backup" provisions in the Policy and owes no further coverage under the Policy.

## **LEGAL STANDARD**

In evaluating a motion to dismiss under Fed.R.Civ.P. 12(b)(6), a court must accept all facts alleged in the complaint as true and draw all reasonable inferences in the light most favorable to the plaintiff. *Johnson v. Rivera,* 272 F.3d 519, 520 (7th Cir.2001). A complaint is not required to contain detailed factual allegations; however, the plaintiff must allege facts that state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). It is not enough that there might be some conceivable set of facts that entitle the plaintiff to relief. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 553–56, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Indeed, the Supreme Court has provided that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678.

When reviewing a motion to dismiss, a court generally considers only the factual allegations of the complaint and any reasonable inferences that can be drawn from those

allegations; however, a court may also examine information from documents "if they are referred to in the plaintiff's complaint and are central to his claim." *Adams v. City of Indianapolis,* 742 F.3d 720, 729 (7th Cir.2014); *see Williamson v. Curran,* 714 F.3d 432, 443 (7th Cir.2013) (noting the Seventh Circuit has taken "a relatively expansive view of the documents that a district court properly may consider in disposing of a motion to dismiss."). Such exception is applicable in cases concerning contract interpretation. *Levenstein v. Salafsky,* 164 F.3d 345, 347 (7th Cir.1998). In those cases the contract itself is "considered part of the pleadings" as it is "central to [the plaintiff's] claim." *Wright v. Assoc. Ins. Cos. Inc.,* 29 F.3d 1244, 1248 (7th Cir.1994).

## DISCUSSION

Amica moves to dismiss the Bekes' complaint asserting that the Bekes have failed to state a claim upon which relief can be granted. As part of their argument, Amica asserts that it has paid all the amounts due and owing to the Bekes under the insurance contract and thus, there is no further coverage available to the Bekes under the Policy. The Bekes respond by asserting, as they did via the factual recitations in their Complaint, that they believe Amica's interpretation of the Policy provisions related to Water Back-up and Sump Discharge upon which it based its payout to the Bekes are misplaced. They contend that the facts of this case do not lend themselves to application of those Policy provisions, as no water back-up occurred on the premises. Instead, they assert that the "over-fill or other accidental and unintended contamination event" provisions in the Policy apply. Thus, the Bekes argue that Amica did not provide appropriate coverage under the Policy because the company wrongly determined that the "water back-up" endorsement to the Policy was controlling. (*Complaint* ¶ 9-13).

Before turning to the substance of the parties' arguments, a preliminary issue exists as to what the parties contend constitutes the contract for insurance in this case. The Bekes attached to their Complaint a twenty-two (22) page document which they assert is the Policy. Attached to its Motion to Dismiss, Amica attached additional pages, including the twenty-two (22) pages submitted by the Bekes, which it contends constitutes the entire Policy in question. It is unclear from the Bekes' responsive filings whether they actually dispute that the additional pages attached by Amica are, in fact, part of the Policy. In their response, they simply state "Defendant has attached a similar but separate contract that it alleges is the applicable contract" (DE 11 at 1) and urge the Court to deny the motion to dismiss on the basis of this "dispute" alone. Nowhere, however, do they expressly argue that the Policy issued to them did not include the additional pages included by Amica or that Amica is incorrect in its assertion that the additional pages are part of the Bekes' Policy. Likewise, the Bekes do not explain how, if at all, the additional pages submitted by Amica affect the claims in their Complaint.[2]

That said, the issue set out by Amica in its motion to dismiss can be resolved whether or not the Court considers the documents attached by the Bekes to their Complaint or the attachments by Amica in its Motion to Dismiss, since they appear to have overlapping provisions. The key substantive issue in this case is whether, by virtue of the factual allegations set forth in their Complaint, the Bekes have stated a plausible claim for relief under the Policy. The Court concludes they have.

---

[2] It is important to note that under the "rule of completeness," which is partially codified in Fed. R. Evid. 106, an adverse party is permitted to introduce other parts of a document or other documents "which ought in fairness to be considered contemporaneously with [another document]," *See* Fed. R. Ev. 106. *DeGroot v. Village of Matteson*, 2014 WL 3360562, 3 (N.D.Ill. 2014), without converting a motion to dismiss into a motion for summary judgment. *See Magellan Int'l Corp. v. Salzgitter Handel GmbH*, 76 F.Supp.2d 919, 923 (N.D.Ill.1999). Thus, to the extent there is no bona fide, dispute about the additional pages submitted by Amica, the Court is free to consider them.

Plaintiffs contend in their Complaint that "raw sewage exploded into the home through the sinks, toilets and sewage pipes" (Complaint at ¶8) and that this event constitutes an "over-fill or other accidental and unintended contamination event" as opposed to a Water Back-Up event under the Policy. (Complaint at ¶9). They further contend that Amica interpreted the event to fall under the Water Back-Up and Sump Discharge provisions of the Policy. This interpretation, it is alleged, is erroneous in that the event was not a "water backup" as the term is defined in the Policy. They further contend that the event was not "caused by water or waterborne material" and thus, the Policy provisions utilized by Amica do not apply.

Here, the sole issue is whether the Bekes have pleaded facts that plausibly could fall within the Policy contrary to those cited by Amica in its decision to process their insurance claim so as to give them a breach of contract claim. Amica's motion, however, seeks this Court to construe the limited facts, which have yet to be fleshed out through discovery, and interpret the various Policy provisions it contends are controlling without regard to other provisions of the contract. It is premature to do so. *Best Flooring, Inc. v. M & I Marshall & Ilsley Bank L* 3242111, 4 -5 (S.D.Ind.,2012) (holding that issues of contract interpretation are not appropriate for resolution by a motion to dismiss since discovery could shed some light on the issue.) Indeed, the construction of a written contract is a question of law for the court, making summary judgment particularly appropriate in contract disputes. *City of Lawrenceburg v. Milestone Contractors, L.P.,* 809 N.E.2d 879, 883 (Ind.Ct.App.2004).

At this stage, the Court's role is to simply determine whether the Bekes have a plausible claim for relief under the Policy based upon the facts stated in the Complaint. As it presently reads, the Bekes Complaint alleges that the sewage that invaded their home was not "water or water borne material" as set forth in the Policy nor did it constitute a backup or overflow so as to

7

implicate those provisions of the Policy. Their facts further assert that this event amounts to an "over-fill or other accidental and unintended contamination event" under the Policy. These are simple, concise, factual statements putting the defendant on notice of the factual basis for their Complaint. As such, they have stated a claim for relief and the Motion to Dismiss is DENIED.

## **CONCLUSION**

For the foregoing reasons, the Defendant's Motion to Dismiss is DENIED. [DE 7].

Entered: This 10th day of November, 2014

s/ William C. Lee
United States District Court
